## ARTHUR J. MULLIGAN *v.* ROBERT RIOUX ET AL.
### (14648)

PETERS, C. J., BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued February 17—decision released June 28, 1994

*John T. Scully,* with whom was *Joseph A. La Bella,* for the appellant (plaintiff).

*John B. Farley,* with whom were *John W. Lemega* and, on the brief, *Michael J. Gustafson,* for the appellees (defendants).

KATZ, J. The principal issue in this appeal is whether the defendants, detectives Robert Rioux and Gerald Myers of the East Hartford police department,[1] are entitled to qualified immunity as a matter of law and, therefore, are immune from the common law malicious prosecution claims and federal civil rights claim brought by the plaintiff, Arthur Mulligan, the director of the East Hartford department of public works. After the jury found in favor of the plaintiff on each claim and the trial court accepted the verdict, the defendants filed a motion to set aside the verdict and for judgment notwithstanding the verdict. The trial court granted the defendants' motion, the plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

The following facts are undisputed. The plaintiff was employed as the director of the department of public works for the town of East Hartford (department) from 1968 until November 1, 1985. On two occasions in 1985, the plaintiff was arrested pursuant to warrants prepared by the defendants on charges stemming from the department's lubrication services contract with Automatic Lubrication Service, Inc. (Automatic Lubrication). The plaintiff was first arrested on October 28, 1985, and charged with one count of "Town Ordinance Violation: Bidding Procedure" in violation of chap-

[1] The town of East Hartford is also a defendant in this case. The plaintiff's claims against the town, brought pursuant to General Statutes §§ 7-101a and/or 7-465, are for indemnification purposes only. At trial, the town admitted that it would be responsible for the conduct of the individual defendants, Rioux and Myers, if they were found to be liable. This opinion does not refer to the town separately in its role as a defendant.

ter 10, article 2, § 10-5 of the code of ordinances of the town of East Hartford[2] (town competitive bidding ordinance) in connection with department purchases of lubrication services from Automatic Lubrication. The affidavit in support of the arrest alleged that the plaintiff, as director of the department, had violated the town competitive bidding ordinance by continuing the department's lubrication services contract with Automatic Lubrication without putting the contract out to bid after it had terminated. The plaintiff was again arrested on November 19, 1985, and charged with twelve counts of bribe receiving in violation of General Statutes § 53a-148,[3] based on twelve rounds of golf he had played at Blackledge Country Club, allegedly paid

[2] Chapter 10, article 2, § 10-5 of the code of ordinances of the town of East Hartford provides: "Purchasing Manual and Amount Limitations Requiring Sealed Bids and Quotations.

"The Purchasing Agent and the Director of Finance shall prescribe rules, regulations, and procedures in a written administrative purchasing manual and all purchases shall be made pursuant thereto. The manual shall be given to all departments with instructions regarding its use.

"All single purchases and contracts, other than professional services for which the requirement of competitive bidding would not be to the Town's advantage, in which the amount of expenditure is estimated to exceed Two Thousand Five Hundred Dollars ($2,500), shall be made from or let by sealed bids. However, all purchases less than Two Thousand Five Hundred Dollars ($2,500), but more than One Thousand Five Hundred Dollars ($1,500), shall be substantiated by three (3) quotations which shall be held as a permanent record for audit and public inspection."

Chapter 1, § 1-14 of the code of ordinances of the town of East Hartford provides in relevant part: "General Penalty.

"(a) Whenever in this Code or in any Ordinance of the Town any act is prohibited or is made or declared to be unlawful or an offense, misdemeanor or public nuisance or whenever in such Code or Ordinance the doing of any act is required or the failure to do any act is declared to be unlawful, where no specific penalty is provided therefor, the violation of any such provision of this Code or any Ordinance shall be punishable by a fine not exceeding Ninety-Nine ($99.00) Dollars, or imprisonment for a term not exceeding six (6) months, or by both such fine and imprisonment, unless a different penalty is prescribed by law."

[3] General Statutes § 53a-148 provides: "BRIBE RECEIVING: CLASS D FELONY. (a) A public servant or a person selected to be a public servant

for by Automatic Lubrication. The affidavit in support of the arrest alleged that the plaintiff, as the director of the department, had charged twelve rounds of golf to Automatic Lubrication's account at the Blackledge Country Club in return for providing "benefits, merchandise, and special considerations to Automatic Lubrication . . . ." Specifically, the affidavit alleged that "[o]ne of the benefits and special considerations that [the department had] afforded to Automatic Lubrication was awarding it the lubrication contract for Town vehicles without going through the bidding procedure as mandated by [the town competitive bidding ordinance]."

During the criminal proceedings that followed his arrests, the plaintiff filed separate motions to dismiss each information under which he stood charged,[4] claiming, inter alia,[5] that "[t]he affidavit relied upon for the issuance of the arrest warrant [in each arrest] contained material inaccuracies and omissions which were the result either of deliberate falsehood or a reckless disregard for the truth." The plaintiff further claimed that, if the court were to set aside such material inaccuracies and consider such material omissions, it would find that there was insufficient evidence to establish prob-

is guilty of bribe receiving if he solicits, accepts or agrees to accept from another person any benefit for, because of, or as consideration for his decision, opinion, recommendation or vote.

"(b) Bribe receiving is a class D felony."

[4] General Statutes § 54-56 provides: "DISMISSAL OF INFORMATION BY COURT. All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."

[5] The plaintiff claimed that chapter 10, article 2, § 10-5 of the code of ordinances of the town of East Hartford was not a penal ordinance and, therefore, did not charge a criminal offense.

able cause that the plaintiff had committed the offenses charged. Accordingly, the plaintiff claimed that he was entitled to an evidentiary hearing pursuant to *Franks* v. *Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), for the purpose of challenging the truthfulness of the arrest warrant affidavits.

In support of his motions, the plaintiff filed affidavits containing offers of proof, which satisfied the trial court in the criminal proceedings, *Tamborra, J.,* that the plaintiff had made the substantial preliminary showing required for a *Franks* hearing. At the close of the *Franks* hearing, Judge Tamborra concluded that, even though the affidavits may have contained some inaccuracies, the plaintiff had not "met his burden of showing that a false statement necessary to the finding of probable cause was knowingly and intentionally included or made with reckless disregard for the truth." Accordingly, Judge Tamborra denied each of the plaintiff's motions to dismiss as to all counts, on the ground that sufficient probable cause existed for allowing the charges against the plaintiff to proceed to trial.[6]

Subsequently, the plaintiff was brought to trial on the criminal charges before Judge Robert Hale. At the close of the state's evidence, the plaintiff moved for a judgment of acquittal pursuant to Practice Book §§ 882 through 884,[7] which Judge Hale granted on February 20, 1987.

---

[6] Judge Tamborra also rejected the plaintiff's claim that chapter 10, article 2, § 10-5 of the code of ordinances of the town of East Hartford was not a penal ordinance. Judge Tamborra noted that chapter 1, § 1-14 of the code of ordinances of the town of East Hartford provides a penalty, a fine or imprisonment for violating any ordinance that requires an affirmative act. Judge Tamborra reasoned that because chapter 10, article 2, § 10-5 is such an ordinance, its violation would necessarily subject one to penal sanctions of the code. Whether such a violation would subject the offender to criminal prosecution by means of General Statutes § 53a-24 is an issue we need not resolve.

[7] Practice Book § 883 provides in relevant part: "[——MOTIONS FOR JUDGMENT OF ACQUITTAL] —— ——IN GENERAL . . .

"After the close of the prosecution's case in chief or at the close of all

Thereafter, in September, 1987, the plaintiff commenced the present action against the defendants. The plaintiff raised three claims in his amended six count complaint:[8] (1) a common law malicious prosecution claim based on his October 28, 1985 arrest; (2) a common law malicious prosecution claim based on his November 19, 1985 arrest; and (3) a federal civil rights claim pursuant to 42 U.S.C. § 1983 (1988)[9] based on both arrests.[10] In support of his three claims, the plain-

the evidence, upon motion of the defendant or upon his own motion, the judicial authority shall order the entry of a judgment of acquittal as to any principal offense charged and as to any lesser included offense for which the evidence would not reasonably permit a finding of guilty. Such judgment of acquittal shall not apply to any lesser included offense for which the evidence would reasonably permit a finding of guilty."

Practice Book § 884 provides in relevant part: "——  ——AT CLOSE OF PROSECUTION'S CASE

"If the motion is made after the close of the prosecution's case in chief, the judicial authority shall either grant or deny the motion before calling upon the defendant to present his [or her] case in chief. . . ."

[8] Each claim was framed in two counts: one count against the defendants Rioux and Myers; and the other count against the defendant town of East Hartford for indemnification.

[9] Section 1983 of title 42 of the United States Code (1988) provides: "CIVIL ACTION FOR DEPRIVATION OF RIGHTS

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

[10] The plaintiff's § 1983 claim alleged liability on the basis of his malicious prosecution claims. See *Conway* v. *Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984) (action for malicious prosecution may support liability under § 1983). Specifically, the plaintiff alleged that the defendants, while acting under color of state law, had caused the plaintiff to be arrested on October 28, and November 19, 1985; that the arrests had violated the plaintiff's right to freedom from illegal seizure of his person, unlawful arrest, and illegal detention, secured by the due process clause of the fifth and fourteenth amendments to the constitution of the United States; and that as a result, the plaintiff had suffered damages.

tiff alleged that the defendants had failed properly to investigate the charges relating to both arrests and had submitted an affidavit in support of each arrest that contained numerous false and inaccurate statements.[11] The plaintiff also alleged that the arrests had been made without probable cause and with malice. The plaintiff further alleged that as a result of the arrests he had received massive amounts of unfavorable publicity, had experienced great humiliation and mental anguish, and had suffered tremendous damage to his reputation.

In their answer to the plaintiff's amended complaint, the defendants asserted four special defenses. They claimed that: (1) qualified immunity shielded them from liability because their alleged acts had been performed in the course of a governmental duty and were discretionary; (2) each arrest had been made pursuant to a valid warrant; (3) they had consulted with prosecuting attorneys in the course of their alleged conduct and were therefore protected by their reliance on the advice of counsel; and (4) their alleged conduct had been objec-

---

[11] The plaintiff alleged, inter alia, that in the affidavits in support of each arrest the defendants had: (1) falsely and inaccurately stated that the department's lubrication services contract with Automatic Lubrication (contract) was fixed for one year; (2) failed to disclose that the contract was a continuing contract that could be terminated by either the department or Automatic Lubrication; and (3) falsely and inaccurately stated that it was the plaintiff's responsibility to put the contract out to bid. Specifically with respect to the affidavit in support of the October 28 arrest, the plaintiff alleged that the defendants had: (1) provided a false and misleading account of the plaintiff's testimony at a meeting of the town council's audit and investigations committee, held for the purpose of investigating the criteria for running the lubrication service, by selectively editing the plaintiff's testimony and by failing to include the plaintiff's complete responses to the committee's questions; and (2) falsely and inaccurately stated that the plaintiff, having the responsibility to put the contract out to bid, had failed to do so by his own admission. Finally, with respect to the affidavit in support of the November 19 arrest, the plaintiff alleged that the defendants had failed to disclose that on eight of the twelve occasions that the plaintiff had played golf at Blackledge Country Club, his round had been neither charged to nor paid for by Automatic Lubrication.

tively reasonable. On November 9, 1989, the defendants filed a motion for summary judgment on the grounds that: (1) the doctrine of qualified immunity protected them from liability; and (2) the doctrine of collateral estoppel precluded the plaintiff from relitigating the validity of the arrest warrants because that issue already had been fully and fairly litigated at the *Franks* hearing during the underlying criminal proceeding. On October 27, 1990, the trial court, *Koletsky, J.,* denied the defendants' motion without memorandum.

Thereafter, the case was tried to a jury, which, on January 2, 1992, returned a verdict in favor of the plaintiff on all six counts of his complaint, awarding a total of approximately $1 million in damages.[12] On January 3, 1992, the defendants moved to set aside the verdict and for judgment notwithstanding the verdict.[13] The trial court allowed the defendants to amend their motion on two occasions. In support of their motion, the defendants reasserted the special defenses of qualified immunity and reliance on the advice of counsel, as well as their collateral estoppel claim. Additionally, the defendants asserted that: (1) there was insufficient evidence at trial to support a finding of lack of probable cause and malice under each count of the complaint; and (2) the verdict was excessive as a matter of law because the trial court improperly had admitted imper-

---

[12] In connection with the plaintiff's common law malicious prosecution claims, the jury awarded damages of $487,000 on the first and second counts, relating to the October 28, 1985 arrest, and $487,000 on the third and fourth counts, relating to the November 19, 1985 arrest. In connection with the plaintiff's civil rights claim, the jury awarded damages of $974,000 on the fifth and sixth counts, relating to both arrests. Because the trial court properly instructed the jury that the plaintiff is entitled to full recovery only once for his suffered harm; *Kilduff* v. *Adams, Inc.,* 219 Conn. 314, 333, 593 A.2d 478 (1991); his damages total $974,000.

[13] After the close of the plaintiff's case-in-chief and again after the close of evidence, the defendants had moved for a directed verdict, claiming qualified immunity as a matter of law. See Practice Book § 321. The trial court reserved decision on both of these motions.

missibly speculative testimony concerning the plaintiff's alleged lost employment opportunity.[14] In its memorandum of decision dated September 17, 1992, the trial court, *M. Hennessey, J.*, concluded that "the defendants [were] entitled to qualified immunity as a matter of law." Accordingly, the trial court granted the defendants' motion to set aside the verdict and rendered judgment for the defendants on all six counts. This appeal followed.

The plaintiff claims that the trial court improperly set aside the jury's verdict because: (1) the defendants, having acted with malice, were not immune from the plaintiff's claims for malicious prosecution under our common law doctrine of qualified immunity; and (2) the defendants' qualified immunity from the plaintiff's civil rights claim depended on disputed questions of fact and, therefore, should not have been set aside as a matter of law. The defendants raise the following alternative grounds for affirming the trial court's judgment: (1) their arrests of the plaintiff were supported by probable cause as a matter of law; (2) they were entitled to qualified immunity because their conduct was objectively reasonable; (3) there was insufficient evidence to support the jury's finding of malice for purposes of the plaintiff's malicious prosecution claims; (4) the defendants' reliance on the advice of the state's attorneys shielded them from liability; and (5) the doctrine of collateral estoppel precluded the plaintiff from relitigating the existence of probable cause because that issue already had been fully and fairly litigated at the *Franks* hearing during the underlying criminal proceeding. In addition, the defendants argue that in the event that we reverse the judgment and reinstate the verdict, we should consider whether the damages awarded by the jury were excessive as a matter of law. Because

---

[14] The defendants raised other grounds for setting aside the verdict that are not relevant to this appeal.

we agree with the plaintiff and reject all of the defendants' alternative grounds for affirmance, we reverse.

At the outset, we note that " '[d]irected verdicts are not favored. *Puro* v. *Henry,* 188 Conn. 301, 303, 449 A.2d 176 (1982)[;] *Petyan* v. *Ellis,* 200 Conn. 243, 244, 510 A.2d 1337 (1986). Our review of a trial court's [decision] to direct a verdict or to render a judgment notwithstanding the verdict takes place within carefully defined parameters. [In determining whether the trial court has correctly set aside the verdict, we] must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial; *Bleich* v. *Ortiz,* 196 Conn. 498, 501, 493 A.2d 236 (1985) . . . . [We will uphold a trial court's decision to set aside the verdict and direct judgment] only if we find that the jury could not reasonably and legally have reached their conclusion. . . . *Bound Brook Assn.* v. *Norwalk,* 198 Conn. 660, 667, 504 A.2d 1047, cert. denied, 479 U.S. 819, 107 S. Ct. 81, 93 L. Ed. 2d 36 (1986) . . . .' (Internal quotation marks omitted.) *Iseli Co.* v. *Connecticut Light & Power Co.,* 211 Conn. 133, 140, 558 A.2d 966 (1989)." *John T. Brady & Co.* v. *Stamford,* 220 Conn. 432, 440–41, 599 A.2d 370 (1991).

I

The plaintiff first claims that the trial court incorrectly set aside the verdict because it applied the wrong standard of qualified immunity to his common law claims of malicious prosecution. The plaintiff asserts that the trial court incorrectly applied to both his civil rights claim and his common law claims an "objective reasonableness" standard of immunity, even though that standard is properly applicable only to his civil rights claim. Under this standard, the defendants' conduct was protected by qualified immunity unless they acted in an objectively unreasonable manner.

The plaintiff argues, to the contrary, that under common law immunity, a showing of malice on the part of the defendants sufficiently defeats qualified immunity. The plaintiff further argues that because the jury reasonably found that the defendants had acted with malice, the trial court incorrectly determined that the defendants were immune as a matter of law from the plaintiff's common law malicious prosecution claims. We agree with the plaintiff.

"The [common law] doctrines that determine the tort liability of municipal employees are well established." *Burns* v. *Board of Education,* 228 Conn. 640, 645, 638 A.2d 1 (1994). Although historically " '[a] municipality itself was generally immune from liability for its tortious acts at common law; *Ryszkiewicz* v. *New Britain,* 193 Conn. 589, 593, 479 A.2d 793 (1984) . . . [municipal] employees faced the same personal tort liability as private individuals.' *Gordon* v. *Bridgeport Housing Authority,* [208 Conn. 161, 165, 544 A.2d 1185 (1988)]." *Evon* v. *Andrews,* 211 Conn. 501, 505, 559 A.2d 1131 (1989). Over the years, however, "[t]he doctrine of governmental immunity has provided some exceptions to the general rule of tort liability for municipal employees." *Burns* v. *Board of Education,* supra, 645. Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. Id. "Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature." *Gauvin* v. *New Haven,* 187 Conn. 180, 184, 445 A.2d 1 (1982). In contrast, " '[m]inisterial' refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." *Wright* v. *Brown,* 167 Conn. 464, 471, 356 A.2d 176 (1975).

Under the facts of this case, the defendants' allegedly tortious conduct constitutes discretionary govern-

mental action for which they, as municipal employees, are generally immune. A municipal employee's immunity for the performance of discretionary governmental acts is, however, qualified by three recognized exceptions: " 'first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence.' (Citations omitted.) [*Evon* v. *Andrews,* supra, 211 Conn. 505.]" *Burns* v. *Board of Education,* supra, 228 Conn. 645. Thus, " '[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties.' *Burns* v. *Reed,* [500 U.S. 478, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991)]; see also *Malley* v. *Briggs,* [475 U.S. 335, 340, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)]; *Harlow* v. *Fitzgerald,* 457 U.S. 800, 807, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)." *DeLaurentis* v. *New Haven,* 220 Conn. 225, 243, 597 A.2d 807 (1991).

The standard of qualified immunity that protects public officials from civil suits pursuant to § 1983, arising from the performance of their discretionary functions, is distinct from that established under our common law. "Although [§ 1983] on its face admits of no immunities"; *Malley* v. *Briggs,* supra, 475 U.S. 339; the United States Supreme Court has held that the qualified immunity defense protects government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* v. *Fitzgerald,* supra, 457 U.S. 818. For purposes of a § 1983 claim, "whether an official protected by quali-

fied immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken . . . ." (Citations omitted.) *Anderson* v. *Creighton,* 483 U.S. 635, 639, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987); *Harlow* v. *Fitzgerald,* supra, 818–19. "A subjective inquiry into an official's personal belief is rejected in favor of an objective analysis of what a reasonable officer in [the] defendant's position would believe. In the context of an allegedly unconstitutional arrest, the objective reasonableness standard bars the defense of qualified immunity '[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.' *Malley* v. *Briggs,* [supra, 344–45]. Thus, even where the law and the scope of permissible official conduct are clearly established, the defense of qualified immunity will protect a government official if it was 'objectively reasonable' for him [or her] to believe his [or her] acts were lawful." *Cartier* v. *Lussier,* 955 F.2d 841, 843–44 (2d Cir. 1992). Moreover, " 'an allegation of malice is *not* sufficient to defeat immunity if the defendant acted in an objectively reasonable manner.' *Malley* [v. *Briggs,* supra, 341] (emphasis added) . . . ." *Cartier* v. *Lussier,* supra, 846.

This comparison of the well established common law[15] and federal doctrines of qualified immunity establishes that the trial court incorrectly applied the federal "objective reasonableness" standard to the plaintiff's

[15] Because neither party has raised the public duty doctrine, and because we already have concluded that the defendants' conduct constitutes discretionary action, we do not consider in this instance the parallel analysis of common law governmental immunity that involves the question of whether the duty imposed upon the defendants is public or private in nature. See *Gordon* v. *Bridgeport Housing Authority,* supra, 208 Conn. 166–67; *Shore* v. *Stonington,* 187 Conn. 147, 152, 444 A.2d 1379 (1982); *Leger* v. *Kelley,* 142 Conn. 585, 589–90, 116 A.2d 429 (1955).

common law claims. In discussing whether the defend-
ants were entitled to qualified immunity as a matter
of law, the trial court made no distinction between the
plaintiff's common law claims and his civil rights claim.
The trial court merely concluded that *Cartier* v. *Luss-
ier,* supra, 955 F.2d 841, was "dispositive of the issue
of qualified immunity and the defendants' claim that
they are entitled to qualified immunity as a matter of
law." In reaching this conclusion, the trial court nei-
ther considered nor cited any state cases. Rather, the
trial court relied solely on federal cases[16] and discussed
the defense of qualified immunity strictly in the con-
text of a § 1983 claim. Thus, we agree with the
plaintiff[17] that the trial court applied the incorrect fed-

---

[16] Specifically, the trial court relied on: *Anderson* v. *Creighton,* supra,
483 U.S. 639; *Harlow* v. *Fitzgerald,* supra, 457 U.S. 818; *Cartier* v. *Luss-
ier,* supra, 955 F.2d 843.

[17] In their brief to this court, the defendants do not expressly dispute
that the trial court applied the incorrect standard of qualified immunity
to the plaintiff's common law claims, but they nevertheless imply that this
court has adopted the federal standard as applicable to such claims. In sup-
port of this position, the defendants cite *Gordon* v. *Bridgeport Housing
Authority,* supra, 208 Conn. 168–69 n.3. The defendants' reliance on *Gor-
don,* however, is entirely misplaced. In *Gordon,* we stated: "This state's
doctrine of governmental immunity accords with the doctrine of govern-
mental immunity as announced by the United States Supreme Court in
*Nixon* v. *Fitzgerald,* 457 U.S. 731, 744, 102 S. Ct. 2690, 73 L. Ed. 2d 349
(1982). There [the United States Supreme Court] stated: '[T]his court con-
sistently has recognized that government officials are entitled to *some form
of immunity from suits for civil damages.' 'As recognized at common law,*
public officers require this protection to shield them from undue interfer-
ence with their duties and from potentially disabling threats of liability.'
*Harlow* v. *Fitzgerald,* [supra, 457 U.S. 806]. Federal law also recognizes
the distinction between discretionary and ministerial acts. Id., 816–17; see
also *Payton* v. *United States,* 679 F.2d 475, 479–80 (5th Cir. 1982)." (Empha-
sis added.) *Gordon* v. *Bridgeport Housing Authority,* supra, 168–69 n.3.
Thus, despite the defendants' claim to the contrary, in *Gordon* we did not
incorporate federal standards into our state's doctrine of qualified immu-
nity; we merely noted that our state's policy of providing some form of
qualified immunity to governmental officials is not inconsistent with the
federal approach.

In addition to suggesting that this court has already adopted the federal
standard as applicable to common law claims, the defendants expressly invite

eral standard of qualified immunity to his common law claims of malicious prosecution.[18]

To succeed in these common law claims, the plaintiff must qualify for one of the exceptions to a municipal employee's qualified immunity for discretionary acts. The plaintiff asserts that the only exception to the qualified immunity of a municipal employee for discretionary acts that is of relevance to the present case is the exception permitting a tort action when the alleged acts involve malice, wantonness or intent to injure, rather than negligence. See *DeLaurentis* v. *New Haven,* supra, 220 Conn. 242–43; *Evon* v. *Andrews,* supra, 211 Conn. 505; *Stiebitz* v. *Mahoney,* 144 Conn. 443, 448–49, 134 A.2d 71 (1957). We agree with the plaintiff's claim that this exception is applicable.

One of the elements that the plaintiff was required to demonstrate in proving his claims for malicious prosecution was that the defendants "acted with malice, primarily for a purpose other than that of bringing an offender to justice.[19] *Zenik* v. *O'Brien,* 137 Conn.

this court to adopt the objective reasonableness standard in the context of state law claims arising out of allegedly unlawful arrests. Because we are unpersuaded by the defendants' arguments, however, we decline to accept this invitation.

[18] The trial court's jury charge on the defendants' qualified immunity defense confirms that the trial court analyzed the plaintiff's common law claims for malicious prosecution under the federal standard for qualified immunity. As that charge reveals, the trial court incorrectly instructed the jury, in conformance with the defendants' request to charge, that the defendants enjoyed the same immunity under both the plaintiff's common law claims and his § 1983 claim: "Our state Supreme Court has recognized that the state standard for governmental immunity is the same as the standards announced by the United States Supreme Court. The officers cannot be held liable unless it is found that they knowingly broke the law or, on the facts known by them at the time, had absolutely no basis for a belief in prosecution. If any reasonable officer could believe in probable cause, then you must find for the defendants."

At trial, the plaintiff took exception to this charge.

[19] In addition to malice, "[a]n action for malicious prosecution . . . requires a plaintiff to prove that: (1) the defendant initiated or procured

592, 595, 79 A.2d 769 (1951); *Brodrib* v. *Doberstein,* 107 Conn. 294, 296–98, 140 A. 483 (1928); *McGann* v. *Allen,* 105 Conn. 177, 185, 134 A. 810 (1926); 3 Restatement (Second), Torts (1977) § 653; W. Prosser, Torts (4th Ed. 1971) § 119." *McHale* v. *W.B.S. Corp.,* 187 Conn. 444, 447, 446 A.2d 815 (1982). In a malicious prosecution action, "the defendant is said to have acted with 'malice' if he [or she] acted primarily for an improper purpose; that is, 'for a purpose other than that of securing the proper adjudication of the claim on which [the proceedings] are based'; 3 Restatement (Second), Torts § 676; such as the desire to 'occasion expense' to the other party. *Whipple* v. *Fuller,* 11 Conn. 582, 586 (1836)." *DeLaurentis* v. *New Haven,* supra, 220 Conn. 256 n.16. The defendants do not deny that the trial court properly instructed the jury as to this definition and we must assume that the jury followed those instructions. *Woodward* v. *Waterbury,* 113 Conn. 457, 460, 155 A. 825 (1931). Because the jury found in favor of the plaintiff on his malicious prosecution claims, it necessarily found that the defendants acted with malice. This finding of malice was sufficient to defeat a defense of qualified immunity under our common law.[20] We conclude, therefore, that, as a matter of law, the trial court incorrectly determined that the doctrine of qualified immunity applicable to § 1983 claims shielded the defendants from liability with

the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; [and] (3) the defendant acted without probable cause . . . . *Zenik* v. *O'Brien,* 137 Conn. 592, 595, 79 A.2d 769 (1951); *Brodrib* v. *Doberstein,* 107 Conn. 294, 296–98, 140 A. 483 (1928); *McGann* v. *Allen,* 105 Conn. 177, 185, 134 A. 810 (1926); 3 Restatement (Second), Torts (1977) § 653; W. Prosser, Torts (4th Ed. 1971) § 119." *McHale* v. *W.B.S. Corp.,* 187 Conn. 444, 447, 446 A.2d 815 (1982).

[20] We do not reach the issue of whether, for purposes of defeating common law qualified immunity, the definition of "malice" is limited to "a purpose other than that of bringing an offender to justice." *Zenik* v. *O'Brien,* supra, 137 Conn. 595.

respect to the plaintiff's common law claims of malicious prosecution.

## II

The plaintiff next claims that the trial court improperly set aside the verdict as a matter of law with respect to his civil rights claim because the issue of whether qualified immunity shielded the defendants from liability turned on disputed issues of material fact. The plaintiff contends that the trial court made its decision to set aside the verdict on the basis of its flawed interpretation of *Cartier* v. *Lussier,* supra, 955 F.2d 841, a case that was decided by the United States Court of Appeals for the Second Circuit after the trial in this case had concluded. The plaintiff argues that as a result, the trial court improperly substituted its judgment for that of the jury on factual issues, and, therefore, its decision should be reversed. We agree.

The trial court granted the defendants' motion to set aside the verdict and for judgment notwithstanding the verdict solely on the basis of *Cartier.*[21] In *Cartier,* the defendant moved for summary judgment asserting that the doctrine of qualified immunity barred the plaintiff's § 1983 claim because an objective basis existed for finding probable cause for the arrests. Id., 843. The United States District Court for the District of Connecticut had denied the defendant's motion, and the Court of Appeals for the Second Circuit reversed. Id. The *Cartier* court held that when factual disputes are *immaterial* to resolving the issue of whether an objective basis existed for finding probable cause, the "protective mantle" of qualified immunity remains intact as a matter of law. Id., 842.

---

[21] The trial court's memorandum of decision provided: "This court finds *Cartier* dispositive of the issue of qualified immunity and the defendants' claim that they are entitled to qualified immunity as a matter of law."

In so holding, the court stated that the "[p]laintiffs may not unwrap a public officer's cloak of immunity from suit simply by alleging even meritorious factual disputes relating to probable cause, when those controversies are nevertheless not material to the ultimate resolution of the immunity issue." Id., 845. The *Cartier* court explained that, in the context of a § 1983 claim, and for purposes of summary judgment, the determination of whether factual disputes are material to the resolution of the issue of qualified immunity is made by applying the same affidavit correction test used in a *Franks* hearing. Id. Under that test, factual disputes are immaterial to the resolution of the issue of qualified immunity if " 'the affidavit accompanying the warrant is sufficient, after correcting for material misstatements or omissions, to support a reasonable officer's belief that probable cause existed.' " Id., quoting *Magnotti* v. *Kuntz,* 918 F.2d 364, 368 (2d Cir. 1990). "Only if the corrected affidavit did not support an objective finding of probable cause would the factual disputes be material to resolving the issue of probable cause. In that case, summary judgment [appropriately would] be denied and [the] factual issues involving the immunity doctrine would be submitted to the jury." *Cartier* v. *Lussier,* supra, 845–46.

In its memorandum of decision, the trial court interpreted *Cartier* as "calling for" a *Franks* hearing, and noted that, in the present action, such a hearing already had been held by Judge Tamborra. The trial court further noted that the "analysis put forth by the *Cartier* court" had not been available either to the trial court, *Koletsky, J.,* or to the parties, when the defendants had filed their motion for summary judgment in 1989. The trial court thus concluded that "in light of *Cartier* and the fact that [in this case] a *Franks* hearing [had been] held after which probable cause [had been] found, we conclude that the defendants are entitled to qualified immunity as a matter of law."

We conclude, as the plaintiff asserts, that the trial court misinterpreted *Cartier* and, therefore, improperly relied on that case in determining that the defendants were entitled to qualified immunity as a matter of law. The trial court improperly gleaned from *Cartier* the proposition that a determination of the existence of an objective basis for finding probable cause at a criminal *Franks* hearing can sufficiently supplant the same determination for purposes of determining the applicability of qualified immunity as a matter of law at a civil trial. In contrast to the trial court's interpretation, however, *Cartier* does not "call" for a *Franks* hearing. Moreover, *Cartier* does not state that an objective finding of probable cause at a criminal *Franks* hearing satisfies the same determination for purposes of resolving the applicability of qualified immunity. Rather, *Cartier* requires that in a civil proceeding, before taking the issue of qualified immunity away from the jury as a matter of law on a motion for summary judgment, the trial court must first determine that there are no material issues of fact relevant to the existence of probable cause. *Cartier* v. *Lussier,* supra, 955 F.2d 845–46. *Cartier* merely states that the trial court must make such a determination by conducting the same type of test that is applied in assessing whether a *Franks* hearing is warranted. See id., 845, 846.

The principles applied by the *Cartier* court are consistent with the principles of federal qualified immunity contained in federal precedent, and do not represent any departure therefrom. See, e.g., *Finnegan* v. *Fountain,* 915 F.2d 817 (2d Cir. 1990); *Warren* v. *Dwyer,* 906 F.2d 70 (2d Cir.), cert. denied, 498 U.S. 967, 111 S. Ct. 431, 112 L. Ed. 2d 414 (1990). In accordance with this established precedent, the defendants were entitled to qualified immunity as a matter of law only if, on the facts found, their conduct either did not violate "clearly established rights" of which a reason-

able person would have known, or it was "objectively reasonable" for them to have believed at the time of the challenged action that their acts did not violate those clearly established rights. See *Finnegan* v. *Fountain,* supra, 823; *Warren* v. *Dwyer,* supra, 74. The right of an individual not to be subjected to arrest without probable cause has long been clearly established; *Golino* v. *New Haven,* 950 F.2d 864, 870 (2d Cir. 1991), cert. denied sub nom. *Lillis* v. *Golino,* U.S. , 112 S. Ct. 3032, 120 L. Ed. 2d 902 (1992); and is not disputed by the parties. Thus, the question in this case was whether it was objectively reasonable for the defendants to believe that their arrests of the plaintiff did not violate that right. See *Calamia* v. *New York,* 879 F.2d 1025, 1036 (2d Cir. 1989). Although the ultimate determination of whether qualified immunity applies is ordinarily a question of law for the court, when, as in this case, there are unresolved factual issues *material* to the applicability of the defense,[22] preventing its early disposition,[23] resolution of those factual issues is properly left to the jury. *Oliveira* v. *Mayer,* 23 F.3d 642, 649 (2d Cir. 1994); *Warren* v. *Dwyer,* supra, 76.

[22] In this case, the factual issues properly left to the jury include, but are not limited to, whether the defendants knew or should reasonably have known that: (1) the contract was ongoing; (2) their police department had concluded in a prior investigation that the contract was ongoing; and (3) the department and various other town officials considered and consistently treated the contract as ongoing in nature. The determination of these factual issues is necessarily predicated on the determination of subsidiary facts, also properly left to the jury. For a discussion of these material factual issues see part III B and C of this opinion.

[23] Because the defense of qualified immunity has been construed as an immunity from suit, not a mere defense to liability; *Mitchell* v. *Forsyth,* 472 U.S. 511, 526–27, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985); when there are no unresolved factual issues material to its applicability, it is preferable for the trial court to decide the issue of qualified immunity as a matter of law on a pretrial motion for summary judgment, or on a motion for a directed verdict. *Oliveira* v. *Mayer,* 23 F.2d 642, 649–50 (2d Cir. 1994); *Warren* v. *Dwyer,* supra, 906 F.2d 76.

In the present case, the trial court instructed the jury that the defendants could not be held liable unless it found that "on the facts known by them at the time [of the arrests], [the defendants] had absolutely no basis for a belief in prosecution." Thus, by virtue of its unchallenged jury instruction, the trial court properly permitted the jury to resolve the factual issues relevant to determining the applicability of qualified immunity.[24] We presume that the jury followed those instructions in arriving at its verdict in favor of the plaintiff. *Woodward* v. *Waterbury,* supra, 113 Conn. 460. The verdict reflects the jury's resolution, against the defendants, of the factual disputes material to the issue of whether the defendants' belief in probable cause was objectively reasonable.

The trial court is authorized to set aside the jury's verdict only when it finds that the jury could not reasonably and legally have reached its conclusion. *John T. Brady & Co.* v. *Stamford,* supra, 220 Conn. 441. In this case, however, the trial court did not set aside the jury's verdict on the ground that it was unsupported by the facts in the record. Nor did the trial court set aside the verdict on the ground that there were no material issues of fact relating to the existence of probable cause.[25] Instead, on the basis of its overly broad

---

[24] We note that the unchallenged jury charge also allowed the jury to consider the ultimate issue of whether it was objectively unreasonable for the defendants to believe that they had probable cause to arrest the plaintiff. This charge was proper according to the most recent decision of the Second Circuit Court of Appeals on this topic. See *Oliveira* v. *Mayer,* supra, 650 (where factual disputes concerning police conduct are revealed and "[t]hese disputes bear directly upon whether it was objectively reasonable for the officers to believe that they were acting lawfully . . . [t]he District Court should have let the jury (a) resolve these factual disputes and (b) based on its findings, decide whether it was objectively reasonable for the defendants to believe that they were acting within the bounds of the law when they detained the plaintiffs." [Citation omitted.]).

[25] The defendants argue that the trial court properly could have applied the correcting test, concluded that probable cause existed as a matter of

interpretation of *Cartier,* the trial court set aside the verdict because it considered itself bound by Judge Tamborra's earlier determination at the *Franks* hearing that the corrected affidavits supported an objective finding of probable cause.[26] We conclude, therefore, that the trial court improperly determined as a matter of law that qualified immunity shielded the defendants from liability for the plaintiff's civil rights claim.

## III

Because we conclude that the trial court improperly set aside the verdict for the plaintiff, we must now turn to the defendants' five alternative grounds for affirmance.

## A

The defendants first argue, as an alternative ground for affirming the judgment of the trial court setting aside the verdict, that undisputed facts established probable cause, as a matter of law, in support of both of the arrests of the plaintiff by the defendants.[27] We disagree.

---

law, and directed a verdict on the ground that there were no material issues of fact relating to the existence of probable cause. We, however, reject this alternative ground for affirming the trial court's judgment to set aside the verdict. See part III A of this opinion.

[26] Our resolution of this issue is consistent with our resolution of the defendants' fifth alternative ground for affirmance discussed in part III E of this opinion. An objective finding of probable cause at the conclusion of a *Franks* hearing does not foreclose the plaintiff from revisiting that issue at a civil proceeding if, by means of civil discovery, the plaintiff may be able to obtain additional evidence relevant to the issue of probable cause. At such a civil proceeding, the trial court would again have the opportunity to assess whether there are issues of fact material to the existence of probable cause that should be reserved for the jury's consideration.

[27] Because the plaintiff's § 1983 claim is supported by his common law claims for malicious prosecution; see *Conway* v. *Mount Kisco,* supra, 750 F.2d 214; the defendants' argument reaches all six counts of the complaint.

"Probable cause has been defined as the knowledge of facts sufficient to justify a reasonable [person] in the belief that he [or she] has reasonable grounds for prosecuting an action. *Paranto* v. *Ball,* 132 Conn. 568, 571, 46 A.2d 6 [1946]. Mere conjecture or suspicion is insufficient. *Zitkov* v. *Zaleski,* 102 Conn. 439, 445, 128 A. 779 [1925]. Moreover, belief alone, no matter how sincere it may be, is not enough, since it must be based on circumstances which make it reasonable. *Shea* v. *Berry,* 93 Conn. 475, 478, 106 A. 761 [1919]. Although want of probable cause is negative in character, the burden is upon the plaintiff to prove affirmatively, by circumstances or otherwise, that the defendant had no reasonable ground for instituting the criminal proceeding. *Stone* v. *Stevens,* 12 Conn. 219, 227 [1837]; *Altman* v. *Standard Refrigerator Co.,* 315 Pa. 465, 477, 173 A. 411 [1934]; 34 Am. Jur. 776." *Zenik* v. *O'Brien,* supra, 137 Conn. 597.

In the present case, the existence of probable cause for both arrests was contingent upon the defendants' assertion, in the affidavits in support of the arrests, that the department's lubrication services contract with Automatic Lubrication was fixed for one year, and had terminated. In the affidavit in support of the October 28 arrest, the defendants claimed that the plaintiff had violated the town competitive bidding ordinance by failing to put the contract out to bid after the contract had terminated. Likewise, in the affidavit in support of the November 19 arrest, the defendants claimed that the plaintiff had violated the state bribe receiving statute because he had allowed Automatic Lubrication to pay for his rounds of golf at the Blackledge Country Club in return for the benefit of continuing the contract, even after it had terminated, without first submitting the contract to bid. If the contract had been a continuing one that remained valid throughout the period in question, there would have been no obligation to submit the

contract to bid; nor would there have been any quid pro quo for the plaintiff's acceptance of a benefit from Automatic Lubrication. Thus, the defendants' assertion of probable cause for both arrests depended upon the contract having terminated.

"In giving meaning to the terms of a contract, we have said that a contract must be construed to effectuate the intent of the contracting parties. . . . *Barnard* v. *Barnard,* 214 Conn. 99, 109, 570 A.2d 690 (1990)." (Internal quotation marks omitted.) *Tomlinson* v. *Board of Education,* 226 Conn. 704, 722, 629 A.2d 333 (1993). If, as in this case, "the parties have reduced their agreement to a writing, their intent 'is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intent existed in the minds of the parties but what intention is expressed in the language used.' (Internal quotation marks omitted.) [*Barnard* v. *Barnard,* supra, 214 Conn. 110.]" Id. Further, "[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corp.,* 203 Conn. 123, 131, 523 A.2d 1266 (1987).

In the present case, the contract in question contains such definitive language. Consequently, the issue of whether the parties intended that the contract be fixed for one year, or continuing, is a question for the court to resolve from the language contained in the contract. The contract has no termination date, but contains a provision permitting either party to give a sixty day termination notice.[28] This provision persuades us that

[28] Paragraph E 6 of the contract provides: "It shall be understood that any contract and/or agreement entered into by the Town of East Hartford pertaining to the specified lubrication service may be canceled by either party by providing the other party with at least sixty (60) days notice of intent to cancel such service."

the contract is a continuing contract terminable by either party at any time upon sufficient notice.

At trial, the plaintiff presented uncontested evidence that during all material times, neither Automatic Lubrication nor the department had issued a notice of intent to cancel the contract. Thus, when the defendants prepared the arrest warrants, the contract had not terminated and was ongoing as a matter of law during the period in question. In light of this determination, we necessarily conclude that the defendants lacked probable cause as a matter of law when they arrested the plaintiff. We, therefore, reject this alternative ground for affirmance.

B

The defendants also argue, as an alternative ground for affirming the trial court's judgment setting aside the verdict, that even if the defendants lacked probable cause to arrest the plaintiff, qualified immunity shielded them from liability on the plaintiff's civil rights claim pursuant to § 1983 because their conduct was objectively reasonable.[29] More specifically, the defendants argue that they are entitled to the defense of qualified immunity because it was objectively reasonable for them to have believed when they arrested the plaintiff that their acts did not violate the plaintiff's clearly established right not to be arrested or prosecuted without probable cause.[30] See *Finnegan* v. *Fountain,* supra,

---

[29] In their brief to this court, the defendants extend this argument to the plaintiff's common law malicious prosecution claims on the ground that this court should adopt the federal standard of qualified immunity as applicable to common law claims for malicious prosecution. Because we already have rejected the defendants' invitation to substitute the federal qualified immunity doctrine for our well established common law qualified immunity doctrine; see footnote 17; we address the defendants' argument only with respect to the plaintiff's civil rights claim.

[30] "The right not to be arrested or prosecuted without probable cause has . . . long been a clearly established constitutional right." *Golino* v. *New Haven,* supra, 950 F.2d 870.

915 F.2d 823 ("to establish the qualified immunity defense, a police officer must satisfy one of two tests: *either* that his [or her] conduct did not violate 'clearly established rights' of which a reasonable person would have known, or that it was 'objectively reasonable' to believe that his [or her] acts did not violate these clearly established rights" [emphasis in original]). We disagree.[31]

At trial, the plaintiff introduced evidence that on September 5, 1985, the audit and investigations committee of the town council of East Hartford (committee) held a meeting for the purpose of investigating "their criteria for running the [lubrication] service and their procedures for monitoring the service . . . ." Present at the meeting were the plaintiff and other department employees, various members of the committee, and representatives of Automatic Lubrication. The minutes of that meeting contained a transcript of the questions by committee members, among others, to the plaintiff, along with his answers, concerning the nature of the lubrication services contract. The transcript was admitted into evidence at trial. In response to questions about the length of the contract, the plaintiff stated: "It was an on-going contract—just continued from month to month and either party had a right to cancel the contract at any time." In addition, the plaintiff stated that the reason the department had not put the contract out to rebid was because of the sixty day cancellation clause.

The chairman of the committee provided the defendants with a copy of the transcript. In fact, in their affi-

---

[31] Despite the dissent's suggestion to the contrary, we do not hold the defendant police officers to the same standard we might hold an attorney specializing in contract law. For this reason, we do not decide this issue as a matter of law. Rather, we examine the evidence that a jury could have relied on to determine that it was not objectively reasonable for the defendant police officers to have believed they had probable cause to arrest the plaintiff.

davit in support of the October 28 arrest, the
defendants relied on portions of the plaintiff's testi-
mony from the transcript. The defendants, therefore,
were aware of the plaintiff's responses to the commit-
tee's questioning regarding the length of the contract,
and had reason to know that the plaintiff and the
department considered the contract to be ongoing in
nature.

Moreover, the plaintiff introduced evidence that,
prior to the defendants' arrests of the plaintiff, the
town's own police department had concluded in a prior
investigation that the contract was ongoing. Specifi-
cally, the plaintiff introduced evidence that in Septem-
ber, 1981: the police department already had conducted
an investigation of the same contract between the
department and Automatic Lubrication; as part of that
investigation, the assistant director of finance had con-
ducted a review of all bills submitted by Automatic
Lubrication during the two years preceding Septem-
ber, 1981; and, as a result of the whole investigation,
the police department had acknowledged that Auto-
matic Lubrication had a valid continuing contract with
the town and had not made any claim that the town's
purchases of lubrication services had violated the town
competitive bidding ordinance. For purposes of test-
ing the objective reasonableness of the defendants'
belief that probable cause existed, the defendants are
held to have known about this earlier investigation. See
*State* v. *Acquin,* 187 Conn. 647, 657, 448 A.2d 163
(1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570,
77 L. Ed. 2d 1411 (1983) ("when we test the quantum
of [evidence supporting] probable cause, it is not the
personal knowledge of the arresting officer but the col-
lective knowledge of the law enforcement organization
at the time of the arrest which must be considered").

At trial, the plaintiff introduced further evidence indi-
cating that the department and various other town offi-

cials considered and consistently treated the contract as ongoing in nature. Specifically, the plaintiff introduced evidence that: during the period from December, 1969, through July, 1985, the town's purchases of lubrication services were approved and authorized by all of the plaintiff's superiors in town government, namely, the mayor, town council and finance director; the account was reviewed annually by the town finance director and subsequently approved by the mayor and the town council in accordance with the budget procedures set forth in the town charter; each bill submitted by Automatic Lubrication over the nearly sixteen years of the lubrication contract was paid by the finance director in accordance with the procedures identified in the town charter and purchasing manual; in addition to the audit performed by the finance director pursuant to the town charter, the assistant finance director conducted a special audit of all bills received from Automatic Lubrication during the two year period immediately prior to September, 1981, at the request of the East Hartford police department; an independent auditor hired by the town council also conducted an annual audit of the books and accounts of the town pursuant to the town charter; and, finally, neither the audit of town expenditures performed by the finance director, the special audit conducted by the assistant finance director, nor the annual audit performed by the independent auditor selected by the town council, reflected that any purchases of lubrication services from Automatic Lubrication during the period in question were in violation of the town competitive bidding ordinance.

On the basis of this evidence,[32] we conclude that the jury could reasonably have inferred that a reasonable

[32] The dissent takes issue with our failure to consider certain evidence that weighs in favor of the objective reasonableness of the defendants' belief in probable cause. We do not dispute the principle that extrinsic evidence favorable to the defendants and known to them at the time of the arrests

police officer in the defendants' position would have known that the plaintiff, his coworkers, Automatic Lubrication, and relevant town officials considered and consistently treated the department lubrication services contract with Automatic Lubrication as ongoing in nature. On the basis of these findings, the jury could have reasonably concluded that it was objectively unreasonable for the defendants to have believed that they had probable cause to arrest the plaintiff and that their conduct did not violate the plaintiff's clearly established rights.[33] Accordingly, we reject this alternative ground for affirmance.

## C

The defendants also argue as an alternative ground for affirming the trial court's judgment setting aside the verdict, that the jury could not reasonably have found that the defendants acted with malice sufficient to prove the plaintiff's claims of malicious prosecution. We disagree.

As we already have stated, to succeed in his claims for malicious prosecution, the plaintiff must show that the defendants acted with malice, that is, primarily for a purpose other than that of bringing the plaintiff to justice. *DeLaurentis* v. *New Haven,* supra, 220 Conn. 256 n.16; *McHale* v. *W.B.S. Corp.,* supra, 187 Conn. 447. Additionally, the plaintiff must prove that the defendants acted without probable cause. *McHale* v.

should be considered in determining the applicability of federal qualified immunity. The evidence to which the dissent refers, however, merely feeds factual disputes, properly left to the jury's resolution, that are already discussed in this opinion. In light of the jury's verdict, initially accepted by the trial court, we can presume that the jury resolved these factual disputes against the defendants so as to render the defense of federal qualified immunity unavailable to them. On appeal, we need only determine whether the jury's resolution of these factual disputes are reasonably supported by the evidence, which we have done in this opinion.

[33] See footnote 24.

*W.B.S. Corp.*, supra, 447. "Want of probable cause and malice, combined, are essential." *Thompson* v. *Beacon Valley Rubber Co.*, 56 Conn. 493, 496, 16 A. 554 (1888). "If the evidence supports the former, we need not consider the latter, since it may be inferred." *Zenik* v. *O'Brien*, supra, 137 Conn. 597; see *Thompson* v. *Beacon Valley Rubber Co.*, supra, 496. Thus, having determined that the defendants lacked probable cause as a matter of law, we conclude that the jury could reasonably have inferred that the defendants acted with malice.

Moreover, there was ample evidence at trial from which the jury could have reasonably found malice separate and apart from the lack of probable cause. The plaintiff introduced evidence that three days prior to arresting the plaintiff, the defendants had promised to contact the plaintiff's attorney and to allow him to surrender should he later become subject to arrest, but thereafter ignored that promise and arrested the plaintiff, at a public meeting of the audit committee, to which the press expressly had been invited. As additional proof of the defendants' malice, the plaintiff introduced evidence of the defendants' failure fully to investigate the charges for which they arrested the plaintiff. See *DeLaurentis* v. *New Haven*, supra, 220 Conn. 258 (" 'to proceed without inquiry would be to act without probable cause where the information is readily obtainable' "). First, the plaintiff introduced uncontested evidence that Automatic Lubrication in fact had not paid for eight of the plaintiff's twelve rounds of golf that were the subject of his November 19 arrest. Additionally, the plaintiff introduced evidence that the defendants had failed to inquire into their own police department's September, 1981 investigation, prior to arresting the plaintiff.

The jury was free to accept these facts and circumstances as true, and to infer therefrom that the defend-

ants had: (1) arrested the plaintiff in public so as to ensure prominent news coverage of the event and the plaintiff's ensuing humiliation; (2) improperly proffered eight felony charges against the plaintiff for eight rounds of golf that had not been paid for by Automatic Lubrication; and (3) remained wilfully ignorant of the police department's prior unfruitful investigation of the department's contract with Automatic Lubrication concerning similar allegations of impropriety. From these inferences, the jury could reasonably have concluded that the defendants acted for an improper purpose, i.e., other than to secure justice. Accordingly, we reject the defendants' claim that the jury could not reasonably have found that the defendants acted with malice sufficient to prove a claim for malicious prosecution.

## D

The defendants next argue, as an alternative ground for affirmance, that their reliance on the advice of state's attorney John Bailey and assistant state's attorney Cornelius Shea prior to proceeding against the plaintiff affords them a complete defense to the plaintiff's claims for malicious prosecution.[34] We disagree.

Although we have held that a defendant's reliance on the advice of counsel can be a complete defense to

[34] In their brief, the defendants discuss the common law defense of reliance on counsel solely in the context of its application to the plaintiff's state law malicious prosecution claims. This is consistent with the position the defendants took at trial. In their request to charge on this issue, titled "Probable Cause—Advice of Counsel," the defendants relied solely on *Brodrib* v. *Doberstein,* supra, 107 Conn. 296, which holds that a defendant's reliance on counsel can be a complete common law defense to an action for malicious prosecution.

Although the defendants do not argue that the common law defense of reliance on counsel applies to the plaintiff's § 1983 claim, they do argue, and we recognize, that any reliance on the part of the defendants on the advice of the state's attorneys is a factor properly to be considered by the jury in assessing whether the defendants acted in an objectively reasonable fashion.

an action for malicious prosecution; *McHale* v. *W.B.S. Corp.,* supra, 187 Conn. 449; *Brodrib* v. *Doberstein,* supra, 107 Conn. 296–97; such a defense protects only the defendant who *fully and fairly states all the material facts within his or her knowledge, or which he or she was charged with knowing,* to the prosecuting attorney, and who *in good faith* abides by that attorney's decision as to whether the facts constituted probable cause for believing that a crime has been committed. *Brodrib* v. *Doberstein,* supra, 296, 298.

At trial, the defendants presented evidence that they had consulted with the state's attorney's office on at least three occasions in connection with the arrests, that affidavits in support of the arrests had been presented to the state's attorneys, and that the state's attorneys had found probable cause to support the arrests. The plaintiff, however, presented evidence that both of the warrant affidavits prepared by the defendants were replete with false statements and omissions of fact.[35] On the basis of this evidence, the jury was free to conclude that the defendants had not made "a full and fair disclosure" of the material facts within their knowledge to the prosecuting attorneys. Accordingly, we reject the defendants' defense that their reliance on the advice of the state's attorney's office shielded them from liability on all counts.

E

As a fifth ground on which to affirm the judgment of the trial court, the defendants argue that the doctrine of collateral estoppel precluded the plaintiff from relitigating the existence of probable cause because that issue already had been litigated fully and fairly during the underlying criminal case at the *Franks* hearing. We disagree.

---

[35] See footnote 11.

"In *Franks* v. *Delaware,* supra, [438 U.S. 155–56], the United States Supreme Court held that if a defendant makes a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.' See also *State* v. *Weinberg,* 215 Conn. 231, 237, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990); *State* v. *Bergin,* 214 Conn. 657, 666, 574 A.2d 164 (1990); *State* v. *Ruscoe,* [212 Conn. 223, 232, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990)]. Cases subsequent to *Franks* have extended the rule to include material omissions from the affidavit. See *State* v. *Weinberg,* supra, [237]; *State* v. *Bergin,* supra, [666]. As the United States Supreme Court noted in *Franks,* '[t]here is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory . . . . There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.' *Franks* v. *Delaware,* supra, 171." *State* v. *Rodriguez,* 223 Conn. 127, 142–43, 613 A.2d 211 (1992).

In the underlying criminal proceeding related to the present action, the plaintiff moved to dismiss the criminal charges against him, claiming that the arrest warrant affidavits contained material inaccuracies and omissions that were the result of either a deliberate falsehood or a reckless disregard for the truth. On February 3, 1986, Judge Tamborra heard the plaintiff's motion and determined that the plaintiff had established the threshold showings required under *Franks*

for the granting of an evidentiary hearing on the issue of the falsity of the affidavits submitted by the defendants with the arrest warrant applications. At the close of that hearing, Judge Tamborra concluded that both arrests of the plaintiff had been supported by probable cause. Accordingly, Judge Tamborra denied the plaintiff's motion to dismiss.

The defendants assert that, because the existence of probable cause defeats all of the plaintiff's claims, the preclusive effect of Judge Tamborra's determination that the corrected affidavit supported an objective finding of probable cause warranted a directed verdict in their favor. Specifically, the defendants assert that the plaintiff is collaterally estopped from relitigating the issue of probable cause previously resolved against him by Judge Tamborra. Accordingly, the defendants urge us to affirm the trial court's judgment to set aside the verdict. We reject the defendants' argument.

"Pursuant to 28 U.S.C. § 1738 (1988)[36] . . . the federal courts 'must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.' *Migra* v. *Warren City School District Board of Education,* 465 U.S. 75, 81, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984). This rule applies to determine the preclusive effect of a state court judgment on a subsequent suit . . . brought pursuant to § 1983. See *Allen* v. *McCurry,* 449 U.S. 90, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980); *Temple of the Lost Sheep, Inc.* v. *Abrams,* 930 F.2d 178, 183 (2d Cir.), cert. denied, 502 U.S. 866, 112 S. Ct. 193, 116 L. Ed. 2d 153 (1991)." *Golino* v. *New Haven,* supra, 950 F.2d 869. For purposes of the

---

[36] Section 1738 of title 28 of the United States Code (1988) provides in relevant part: "[J]udicial proceedings or copies thereof, so authenticated, [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State . . . from which they are taken."

plaintiff's § 1983 claim, we are operating as a federal court. Consequently, with respect to both the plaintiff's common law claims and civil rights claim, the issue of whether Judge Tamborra's determination precludes further litigation turns on our interpretation of this state's law of issue preclusion. See id.

Under Connecticut law, "[c]ollateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . The doctrine of collateral estoppel is based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." (Citations omitted; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones,* 220 Conn. 285, 296, 596 A.2d 414 (1991).

We conclude that in the present action, the plaintiff was not provided with a full and fair opportunity as that phrase is used in the collateral estoppel lexicon to litigate the issue of probable cause at the *Franks* hearing. "The requirement of full and fair litigation ensures fairness, which is a 'crowning consideration' in collateral estoppel cases." Id., 306. In discussing what constitutes "full and fair litigation" for the purposes of collateral estoppel, we have stated that "if the nature of the hearing carries procedural limitations that would not be present at a later hearing, the party might not have a full and fair opportunity to litigate." Id. Because, in Connecticut, a *Franks* hearing occurs early in the underlying criminal case, it necessarily has procedural limitations that were not present in the plaintiff's subsequent civil trial on his claims for malicious prosecution. For example, when a defendant succeeds

in establishing a *"substantial* showing of a *false* statement *intentionally* and/or *recklessly* made by the *affiant"*; (emphasis in original) *State* v. *Dolphin,* 195 Conn. 444, 458, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985); and is thus granted a *Franks* hearing, his or her access to discovery is far more limited than in a civil proceeding. Compare, e.g., General Statutes §§ 54-46a (b) and 54-86 through 54-86c, and Practice Book §§ 620, 625, 731 through 755 and 764, with General Statutes §§ 52-148a through 52-148e, 52-149a through 52-152, 52-155 through 52-157 and 52-197 through 52-200a, and Practice Book §§ 216 through 249. Accordingly, we conclude that the doctrine of collateral estoppel did not preclude the plaintiff from litigating the existence of probable cause even though that issue had already been partially litigated at an earlier *Franks* hearing.

## IV

Because we reverse the judgment and reinstate the verdict, we must also consider the defendants' claim that the damages awarded by the jury were excessive as a matter of law and based on inadmissible evidence. Specifically, the defendants argue that the trial court incorrectly admitted the testimony of David Hanlon concerning an alleged lost employment opportunity claimed by the plaintiff. The defendants further argue that because Hanlon's testimony was impermissibly speculative, it cannot properly support the jury's award of thousands of dollars of damages, attributable only to Hanlon's testimony. In the alternative, the defendants argue that the jury acted out of passion, sympathy, or another improper motive in awarding the plaintiff's damages. Consequently, the defendants urge us to conclude that the verdict is excessive as a matter of law and to remand the case for a new trial on

the question of damages. Pursuant to Practice Book § 4013,[37] we address their claim.

The defendants raised their claim of excessive damages in their motion to set aside the verdict and for judgment notwithstanding the verdict[38] and briefed the claim in their memorandum in support of their motion. Because the trial court based its decision to grant the defendants' motion solely on the ground of the qualified immunity defense, however, it never ruled on the defendants' claim.

The decision whether to reduce a jury verdict because it is "excessive as a matter of law" rests solely within the discretion of the trial court, pursuant to General Statutes § 52-216a.[39] See, e.g., *Seals* v. *Hickey,* 186 Conn. 337, 348, 441 A.2d 604 (1982). Further, the proper standard of review of a trial court's decision to grant or deny a motion to set aside a verdict as excessive as a matter of law is that of an "abuse of discretion." *Oakes* v. *New England Dairies, Inc.,* 219 Conn. 1, 14, 591 A.2d 1261 (1991); *Seals* v. *Hickey,* supra, 348. In the absence of the trial court's ruling on the defendants' motion to set aside the verdict as excessive, we have no basis upon which to review the defendants' claim. Accordingly, we remand the case to the trial court for its consideration of this claim. See *Seals* v.

---

[37] Practice Book § 4013 (a) (1) provides in relevant part: "If any appellee wishes to . . . (B) present for review adverse rulings or decisions of the court which should be considered on appeal in the event the appellant is awarded a new trial . . . that appellee shall file a preliminary statement of issues within fourteen days from the filing of the appellant's preliminary statement of the issues. . . ."

[38] The defendants raised the claim of excessive damages in their original motion to set aside the verdict and in their first amended motion to set aside the verdict and for judgment notwithstanding the verdict.

[39] General Statutes § 52-216a provides in relevant part: "If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. . . ."

*Hickey,* supra, 348 n.9 ("we do not know of any reason why any party who claims that the trial judge has abused his [or her] discretion in acting under General Statutes § 52-216a may not . . . move to have him [or her] reconsider that exercise in the trial court").

The judgment is reversed and the case is remanded to the trial court for an articulation in accordance with part IV of this opinion.

In this opinion PETERS, C. J., BORDEN and NORCOTT, Js., concurred.

BERDON, J., concurring and dissenting. I agree with a great deal of what my learned colleagues have stated in the majority opinion. Nevertheless, I disagree with the majority's disposition of the claim for qualified immunity raised by the defendant police officers (defendants) as a defense to the federal civil rights claim brought under 42 U.S.C. § 1983. The issue of whether the defendants are entitled to immunity was properly raised in the motion to set aside the verdict and for judgment notwithstanding the verdict (postverdict motion). The trial court ruled on the postverdict motion in the defendants' favor solely on the basis of issue preclusion, because in the criminal proceedings against the plaintiff Judge Tamborra determined in a *Franks* hearing[1] that there was probable cause to support the arrest warrants. I agree with the court that the determination of probable cause in the criminal proceedings pursuant to the *Franks* hearing should not preclude the plaintiff from relitigating the issue in a § 1983 action, or in a state law malicious prosecution

[1] *Franks* v. *Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). In *Franks,* the United States Supreme Court held that, under certain circumstances, criminal defendants are entitled to an evidentiary hearing to attempt to demonstrate that the police misrepresented the facts supporting probable cause contained within an arrest warrant affidavit. Id., 171-72.

action.[2] This, however, does not foreclose the issue of whether, as a matter of law, the defendants were protected by qualified immunity in seeking the arrest warrants. As the majority concedes, if there are no material facts in dispute, the issue of qualified immunity should be decided as a matter of law by the trial court. Because the trial judge, in deciding the postverdict motion, never reviewed the issue on its merits but relied solely on the claim that the plaintiff was precluded from relitigating the issues by the criminal *Franks* hearing, I would remand this case to the trial court to make that determination.[3]

---

[2] I point out that the plaintiff in this case makes *no* claim that he did not have the necessary information at the time of the *Franks* hearing to litigate the issue fully before Judge Tamborra. The plaintiff merely states in a conclusory fashion that he had no "full and fair opportunity, for collateral estoppel purposes, to litigate the issues in dispute at the *Franks* hearing," relying on *Golino* v. *New Haven,* 950 F.2d 864 (2d Cir. 1991), cert. denied sub nom. *Lillis* v. *Golino,*　　　 U.S.　　 , 112 S. Ct. 3032, 120 L. Ed. 2d 902 (1992). *Golino* is inapposite to this case. In *Golino,* the court, interpreting Connecticut law, held that a probable cause hearing to determine whether the defendant should stand trial for murder had no preclusive effect in a subsequent § 1983 suit because there had been no opportunity for the defense to present evidence or call witnesses. Id., 869–70. In the present case, the plaintiff was afforded a full adversarial hearing in the *Franks* hearing.

Nevertheless, I agree with the bright line rule promulgated by the court that because "a *Franks* hearing occurs early in the underlying criminal case, it necessarily has procedural limitations that were not present in the plaintiff's subsequent civil trial" and accordingly should not have preclusive effect in a subsequent civil suit. As pointed out by the majority, the procedural limitation is that the *Franks* hearing is subject to restrictive criminal discovery rules, so that the defendant's access to vital evidence is more limited than in a civil proceeding. We have the authority to establish this rule because the question of whether preclusive effect is given to the result of a *Franks* hearing is, as the majority points out, a question of state law. See *Guenther* v. *Holmgreen,* 738 F.2d 879, 884 (7th Cir. 1984), cert. denied, 469 U.S. 1212, 105 S. Ct. 1182, 84 L. Ed. 2d 329 (1985) (applying Wisconsin law to require that a *Franks* hearing has preclusive effect in a § 1983 suit).

[3] Because I would remand this matter to the trial court to determine whether there were sufficient undisputed facts to decide the issue of qualified immunity as a matter of law, I would also include in that remand the

As a preliminary matter, I point out that with regard to qualified immunity we are not free to chart our own course. Rather, we must be guided by federal precedent, and can neither expand nor contract the scope of this defense. *Martinez* v. *California,* 444 U.S. 277, 284 and n.8, 100 S. Ct. 553, 62 L. Ed. 2d 481 (1980). Applying the objective reasonableness standard to the conduct of government officials will allow many defendants who have deliberately and maliciously caused harm to innocent citizens to escape liability under § 1983. That, however, is the path that the United States Supreme Court has taken and our national legislature has opted not to change course through legislation.[4]

issue of whether there was probable cause to issue the warrants, which would affect all of the counts. If there was probable cause to support the warrants, there would be no need to decide the issue of qualified immunity and the verdict as to the § 1983 and malicious prosecution counts would have to be set aside. The trial court did not decide this issue although it was raised in the postverdict motion. The issue, as the majority concedes in part III A of its opinion, is dependent to a significant degree on whether the contract between the town and Automatic Lubrication was ongoing or had terminated.

[4] At one time, a claim of qualified immunity could be defeated by proof that the defendant public official acted in an objectively unreasonable manner, *or* that the official acted in bad faith, with malice. *Wood* v. *Strickland,* 420 U.S. 308, 322, 95 S. Ct. 992, 43 L. Ed. 2d 214 (1975). In 1982, the United States Supreme Court overruled *Strickland* and held that the subjective malice of a public official is irrelevant to the existence of qualified immunity. *Harlow* v. *Fitzgerald,* 457 U.S. 800, 817–18, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

A glaring example of the potential injustice caused by the rejection of a subjective standard is found in *Oliveira* v. *Mayer,* 23 F.3d 642 (2d Cir. 1994). In *Oliveira,* a private citizen reported to the Stamford police his suspicion that the plaintiffs had committed a burglary. Id., 644. The citizen's sole basis for the suspicion was the following observations, communicated to the police: the plaintiffs had dark skin; they were driving in a dilapidated station wagon with New York license plates; they were seen emerging from a one way street in an affluent neighborhood in North Stamford; and they were handling an expensive video camera. On the basis of this information, six police cruisers located and stopped the plaintiffs' car using "high-risk" stop procedures. The plaintiffs were ordered by loudspeaker to stop and exit their vehicle, by police with guns drawn. They were each handcuffed, searched while spread over

We must apply the appropriate federal law to this case and, most importantly, give clear guidance to our trial courts and the bar for future cases. Simply put, we are bound by federal precedent on federal issues no matter how unjust or unwise we might think that law is.

Federal law does not, however, restrain this court on the counts predicated on state law. Indeed, I fully support the majority's rejection of federal qualified immunity as a defense to those counts.

I

The defense of qualified immunity is, of course, applicable to a § 1983 action.[5] "Government officials performing discretionary functions are shielded from personal liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow* v. *Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). Even where the permissible scope of activity is clearly defined, the qualified immunity defense protects an official if it was 'objectively reasonable' for him to believe his acts were lawful. See *Anderson* v. *Creighton,* 483 U.S. 635, 641, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987); *Robison* v. *Via,* 821 F.2d 913, 920–21 (2d Cir. 1987)." *Magnotti* v. *Kuntz,* 918 F.2d 364, 367 (2d Cir. 1990).

---

the hood of a police cruiser, and detained in the cruisers until the police determined that no burglary had occurred, at which point they were released. Id. The Second Circuit upheld the decision of the District Court that these actions violated the plaintiffs' rights under the fourth amendment as a matter of law. Id., 648. Nevertheless, applying the objective qualified immunity standard, the Second Circuit reversed the determination of the District Court that, as a matter of law, the defendants could not assert qualified immunity to the plaintiffs' claims brought under the fourth amendment. Id., 649–50. Surely, qualified immunity would not be available to these police officers under the *Strickland* subjective/objective standard.

[5] I agree with part 1 of the majority opinion. The federal qualified immunity defense is not a shield against our common law action of malicious prosecution.

The three factors that must be considered in determining whether the police officers are entitled to immunity in a § 1983 action are whether: (1) "it was . . . clear at the time of the official acts that the interest asserted by the plaintiff was protected by a federal statute or the Constitution"; (2) "it was . . . clear at the time of the acts at issue that an exception did not permit those acts"; or (3) "it was objectively reasonable for [the officer] to believe that his acts did not violate [the plaintiff's] rights." (Internal quotation marks omitted.) *Krause* v. *Bennett,* 887 F.2d 362, 368 (2d Cir. 1989).

First, the "right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right." *Golino* v. *New Haven,* 950 F.2d 864, 870 (2d Cir. 1991), cert. denied sub nom. *Lillis* v. *Golino,* U.S. , 112 S. Ct. 3032, 120 L. Ed. 2d 902 (1992). Second, the parties in this case do not suggest that any exception is applicable. Accordingly, neither of the first two factors cloaks the defendants with immunity.

The third factor—that is, whether it was objectively reasonable for the officers to believe that their acts did not violate the plaintiff's rights—requires that the court determine if "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Id., 870. "No other 'circumstances' are relevant to the issue of qualified immunity." *Davis* v. *Scherer,* 468 U.S. 183, 191, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984).

The question of whether the defendants are entitled to qualified immunity is generally one for the court. *Hunter* v. *Bryant,* 502 U.S. 224, 228, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991); 2 S. Nahmod, Civil Rights and Civil Liberties Litigation (3d Ed. 1991) § 8.08. The

Second Circuit Court of Appeals has also made clear that qualified immunity should be decided as a matter of law when there is no dispute on the predicate facts.[6] *Finnegan* v. *Fountain,* 915 F.2d 817, 821 (2d Cir. 1990); *Warren* v. *Dwyer,* 906 F.2d 70, 76 (2d Cir.), cert. denied, 498 U.S. 967, 111 S. Ct. 431, 112 L. Ed. 2d 414 (1990). "The better rule . . . is for the court to decide the issue of qualified immunity as a matter of law, preferably on a pretrial motion for summary judgment when possible, or on a motion for a directed verdict. If there are unresolved factual issues which prevent an early disposition of the defense, the jury should decide these issues on special interrogatories. The ultimate legal determination whether, on the facts found, a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide." *Warren* v. *Dwyer,* supra, 76.

The determination of whether the defendant police officers are immune should be made by the trial court

---

[6] In *Oliveira* v. *Mayer,* 23 F.3d 642 (2d Cir. 1994), the Second Circuit Court of Appeals recently held that the ultimate issue of whether police officers acted in an objectively reasonable manner, for purposes of qualified immunity, should have been decided by the jury rather than the District Court as a matter of law. Id., 649–50. Although this conclusion would seem to contradict other decisions of the Second Circuit, the decisions are reconcilable because the factual issues in *Oliveira* were inextricably interwoven with the legal conclusion. The ultimate issue that the jury had to determine was whether it was "objectively reasonable for the police to believe that their detention of the plaintiffs was only a *Terry* stop or that they possessed probable cause to make an arrest." Id. To make this determination it was necessary for the jury to resolve a number of factual disputes, because of "conflicting accounts of the total duration of the detention, the plaintiffs' responsiveness to the police's instructions, the physical treatment of the plaintiffs once removed from their vehicle, the defendants' use of their weapons, and a number of other particulars." Id., 650. Under these circumstances, it would be impossible to isolate discrete factual issues that the jury could resolve by answering interrogatories so that the District Court could make the ultimate determination of whether the police acted in an objectively reasonable manner. Therefore, under the facts of *Oliveira,* the ultimate conclusion of objective reasonableness had to be made by the jury based on its resolution of the various factual disputes.

even if it is raised by a postverdict motion. *Warren* v. *Dwyer,* supra, 906 F.2d 74; *Krause* v. *Bennett,* supra, 887 F.2d 368–69 (plaintiff's verdict vacated following trial court determination on postverdict motion that defendant police officer was immune).[7] This is particularly important in a § 1983 action predicated on a fourth amendment violation, because it is difficult to separate the issue of qualified immunity from the merits, and accordingly there is a potential for confusion of the jury. *Warren* v. *Dwyer,* supra, 76.

The majority rejects sending this back to the trial court because factual issues were disputed and "the jury could reasonably have inferred that a reasonable police officer in the defendants' position would have known that the plaintiff, his coworkers, Automatic Lubrication, and relevant town officials considered and consistently treated the department lubrication services contract with Automatic Lubrication as ongoing in nature." I agree with the majority that factual disputes that are material and necessary to the resolution of whether an objectively reasonable basis existed for finding probable cause are properly given to the jury. *Cartier* v. *Lussier,* 955 F.2d 841, 845–46 (2d Cir. 1992). The majority claims that such factual issues exist in the present case, stating that "the factual issues properly left to the jury include, but are not limited to, whether the defendants knew or should reasonably have known that: (1) the contract was ongoing; (2) their police department had concluded in a prior investigation that

---

[7] The fact that the defendants did not object to the jury charge or proposed interrogatories should not foreclose review of the issue of qualified immunity on postverdict motions. In the present case, the defendants pleaded qualified immunity as a special defense, claimed it as a ground for summary judgment, sought a directed verdict based on it and squarely raised the issue in the postverdict motion. Under these circumstances, the defendants preserved their claims. *Krause* v. *Bennett,* supra, 887 F.2d 369; *Stubbs* v. *Dudley,* 849 F.2d 83, 85 (2d Cir. 1988), cert. denied, 489 U.S. 1034, 109 S. Ct. 1095, 103 L. Ed. 2d 230 (1989).

the contract was ongoing; and (3) the department and various other town officials considered and consistently treated the contract as ongoing in nature." In my opinion, there are two reasons why the trial court, not this court, should decide in the first instance whether the defendants are shielded by qualified immunity.

First, I would remand this issue because of the voluminous record in this case, the uncertainty of what necessary facts (if any) were in dispute and the absence of any trial court opinion addressing qualified immunity on its merits. See *Finnegan* v. *Fountain,* supra, 915 F.2d 821 (leaving issue of qualified immunity to the trial court on remand).

Second, I am not persuaded that any facts necessary to determine the objective reasonableness of the defendants' conduct are in dispute. In this regard, it is important to note that all the facts do not have to be undisputed for the trial court to decide the issue of qualified immunity. *Jennings* v. *Joshua Independent School District,* 877 F.2d 313, 317 (5th Cir. 1989) ("In this case there were enough undisputed facts for the court to have made a legal determination that [the defendant] was entitled to immunity. We certainly cannot say that it was obvious that an application for a warrant should not have been made in this case."). In fourth amendment cases, the trial court, in its traditional role of determining probable cause, has a significant role to play in weighing the facts to determine the reasonableness of the defendants' conduct. *Torchinsky* v. *Siwinski,* 942 F.2d 257, 262–64 (4th Cir. 1991) (assessing reasonableness of defendant's investigation, including reasonableness of defendant's belief in the credibility of a witness to a crime, as a matter of law).

The majority fails to consider certain evidence that weighs in favor of the objective reasonableness of the defendants' actions and upon consideration of the entire

record could very well be conclusive on this issue. As the majority concedes, a crucial issue underlying the reasonableness of the defendants' belief in the existence of probable cause is whether the contract with Automatic Lubrication could reasonably be interpreted as having terminated under all relevant circumstances. With regard to this issue, the most glaring undisputed facts are that the contract was entered into sixteen years before the warrants were issued and was never put up for rebidding during this period. These facts alone have a substantial bearing on whether police officers of reasonable competence could disagree on the issue of whether the contract was ongoing.

The majority also fails to consider the significant fact that the defendants' investigation had uncovered evidence of a series of price increases for the contractual lubrication services, and the plaintiff had acquiesced in these price increases without requiring competitive bidding on the services. The plaintiff admitted at trial that he had authorized these price increases, and that if bidding had been required, it would have been his responsibility to initiate the process. Although the majority states that "relevant town officials considered and consistently treated the . . . contract . . . as ongoing in nature," the purchasing agent for the city of East Hartford testified he had told the defendants that, in his opinion, there was an obligation to rebid the contracts when the prices first increased because the original contract terminated at that point. Furthermore, in the minutes of the September 5, 1985 town council audit committee meeting, which were supplied to the defendants before the warrants were issued, the plaintiff discussed the price increases, and committee chairman Henry Genga stated his opinion that the contract was not ongoing and should have been put out to bid. The defendants argue that in view of these circumstances, reasonable law enforcement officers could

have reached the conclusion that the contract was not ongoing and this would support probable cause to arrest the plaintiff on both charges.

The majority ignores the evidence of price increases and its effect on the reasonableness of the defendants' conduct, apparently because it was not expressly made part of the arrest warrant affidavits. Although I agree that the trial court should consider material omissions that undermine a reasonable belief in probable cause,[8] extrinsic evidence, known to the defendants, that supports probable cause should be considered. See, e.g., *Torchinsky* v. *Siwinski,* supra, 942 F.2d 262–63 (countering plaintiff's allegation of unreasonable investigation by examining various facts without any apparent limitation to four corners of warrant affidavit); *Krause* v. *Bennett,* supra, 887 F.2d 369–72. As a general principle in determining qualified immunity, what a defendant knew at the time of the alleged constitutional violation is relevant in determining whether he or she acted in an objectively reasonable manner. *Anderson*

---

[8] I agree that under *Malley* v. *Briggs,* 475 U.S. 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986), the trial court is to consider extrinsic information known to the defendants but not found within the warrant in assessing the question of objective reasonableness. In *Briggs,* the United States Supreme Court held that "the same standard of objective reasonableness . . . applied in the context of a suppression hearing . . . defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest. Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, [*United States* v. *Leon,* 468 U.S. 897, 923, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)], will the shield of immunity be lost." Id., 344–45. Although this broad statement suggests that in making the determination of objective reasonableness the court should focus solely on the warrant, the Second Circuit Court of Appeals has held that the inquiry is not limited to the four corners of the warrant. *Cartier* v. *Lussier,* supra, 955 F.2d 845. Instead, the trial court must determine "if the affidavit accompanying the warrant is sufficient, after correcting for material misstatements or omissions, to support a reasonable officer's belief that probable cause existed." (Internal quotation marks omitted.) Id.

v. *Creighton,* supra, 483 U.S. 641; *Bieluch* v. *Sullivan,* 999 F.2d 666, 672 (2d Cir. 1993), cert. denied,     U.S. , 114 S. Ct. 926, 127 L. Ed. 2d 219 (1994).[9]

Indeed, the analysis in *Krause* v. *Bennett,* supra, 887 F.2d 369–72, demonstrates the principle that extrinsic evidence favorable to the defendants and known to them at the time should be considered in determining the existence of qualified immunity. In *Krause,* the arrest warrant affidavit stated that the plaintiff "knowingly" possessed stolen property, a traffic sign that had been missing for seventeen years. Id., 366. The court relied on a number of facts external to the affidavit; id., 371; to support its determination that "the circumstances as known to [the defendant] at the time of the arrest and the application for the warrant were sufficient to support a finding of probable cause." Id., 370.

The majority also fails to consider Judge Tamborra's determination pursuant to the *Franks* hearing that "I cannot find that any of the claims, inaccuracies, or omissions in either of the affidavits resulted from deliberate falsehood or reckless disregard of the truth." This trial court finding, although having no preclusive effect in the civil case, should weigh in favor of the objective reasonableness of the officers' conduct.

Further, I disagree with the majority that advice of counsel was not raised as an issue and therefore should not be considered in determining the availability of qualified immunity as a shield to the § 1983 count.[10]

---

[9] I recognize that, in a criminal *Franks* hearing, the state could not rely on material omissions that support probable cause to justify the prosecution of the defendant. Qualified immunity presents, however, a different issue than a criminal *Franks* hearing—that is, the objective reasonableness of the officers who sought the warrant under all the circumstances.

[10] The defendants' brief raises the issue as to all the counts including the § 1983 count, arguing that the conclusion that the defendants acted in an objectively reasonable manner is bolstered because "[t]own officials openly disputed the validity of the contract and the State's Attorney advised the

To the extent the facts are undisputed on this issue, they should be considered by the trial court. Reliance on advice of the prosecuting authority is a *factor* in assessing the objective reasonableness of the defendants' decision that probable cause was present. *Jennings* v. *Joshua Independent School District,* supra, 877 F.2d 318; see *Torchinsky* v. *Siwinski,* supra, 942 F.2d 263 (reliance on advice of experienced detective supported objective reasonableness of probable cause determination). In the present case, as the majority points out, the defendants presented evidence that they had consulted with state's attorneys on at least three occasions. The defendant Rioux testified that he consulted with chief state's attorney John Bailey on the bidding ordinance warrant application, and assistant state's attorney Cornelius J. Shea on the bribe receiving warrant application. The fact that the affidavits presented may have contained material omissions and misstatements is irrelevant, because the central issue for probable cause, as I previously pointed out and the majority concedes, was whether the contract language should reasonably have been interpreted as an ongoing contract. With regard to *this key fact,* Rioux testified that "[t]he conclusion of the state's attorney . . . was that as soon as a price increase was requested and granted that would constitute a new contract." Shea testified that he directed the defendants' investigation on the bribe receiving charges, assisted in the preparation of the warrant affidavit, and reviewed various

---

defendants of his concurring opinion." Furthermore, the defendants raised the issue in the trial court, requesting and receiving the following jury charge: "There is uncontroverted evidence in this case that the officers consulted with State's Attorney Bailey and Assistant State's Attorney Shea on a number of occasions, that affidavits were presented to them, and that they found probable cause and judges signed the warrants.

"Ordinarily, reliance on counsel is conclusive on the reasonableness of the officer's conduct even if the attorney's advice was unfounded or erroneous. The only exception to this rule is where there was not a full and fair disclosure to the attorney."

documents including the minutes of the audit committee meeting. Shea further testified that "the contract for the services to the town had had an increase in the prices over the initial contract, that the procedures required that Mr. Mulligan instigate activity to cause the contract to go back out to bid, and that he did not do so." The price increases, in Shea's opinion, invalidated the contract despite the language of the cancellation clause relied on by the majority. Accordingly, Shea believed that there was probable cause to arrest the plaintiff. Bailey's recollection was somewhat more hazy, but he testified that he believed that he had discussed the price increases with Rioux, and was of the opinion at the time that a price increase would invalidate the contract and form a new contract.[11]

Moreover, the fact that the majority, in order to demonstrate the lack of probable cause for the arrests, finds it necessary to utilize legal principles of contract interpretation also gives me great pause in rejecting the defense of qualified immunity, and is further reason why I believe this matter should be remanded. The objective reasonableness defense requires that we analyze whether "reasonable [police] officers could disagree as to whether probable cause exists," not reasonable lawyers or law students. (Emphasis added.) *Cartier* v. *Lussier*, supra, 955 F.2d 846. Although the United States Supreme Court has instructed that "a reasonably competent public official should know the law *governing his conduct*"; (emphasis added) *Harlow* v. *Fitzgerald*, supra, 457 U.S. 819; to my knowledge the courts have not implied that a reasonably competent police officer should know the law of contracts.[12]

---

[11] Bailey admitted on cross-examination, however, that he did not have a recollection of specific discussions in this regard. Bailey also testified that he could not remember whether he was presented with a copy of the contract itself.

[12] Furthermore, if we are going to charge the defendant police officers with knowledge of the law of contract, the majority should discuss and con-

Finally, I disagree with the analysis of the majority with regard to the 1981 East Hartford police investigation that concluded that the contract was ongoing. The majority charges the defendants with knowledge of this investigation that occurred several years before their own investigation as follows: "For purposes of testing the objective reasonableness of the defendants' belief that probable cause existed, the defendants are held to have known about this earlier investigation."[13] I do not believe, however, that the protective principles of qualified immunity could countenance the automatic charging of a police officer defendant with the collective knowledge of his entire agency, particularly when evidence indicates that the defendants did not have access to the 1981 investigation file. Rioux testified that the records of this earlier investigation were unavailable to him at the time of his investigation, and he had no knowledge of their existence, as they were not stored in the regular police files, but in the files of the internal affairs department of the police department. Detective Robert Kenary corroborated this testimony. He testified that he discovered the records of

sider the legal significance of a change in price. See *Manzin* v. *United Bank & Trust Co.,* 6 Conn. App. 513, 516, 506 A.2d 169 (1986).

[13] The case cited by the majority to support this proposition, *State* v. *Acquin,* 187 Conn. 647, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983), is wholly inapposite, as it stands for the proposition that, *in determining whether probable cause supports the warrantless seizure of a defendant,* the courts consider "the collective knowledge of the law enforcement organization at the time of arrest . . . ." Id., 657. This presumption has the purpose of facilitating the successful prosecution of defendants arrested on probable cause. The majority violates fundamental principles of federal law by turning this presumption upside down and using it to undermine an officer's claim of qualified immunity, because as previously indicated the objective reasonableness of conduct is assessed based on the facts and circumstances *known* to the defendants. See, e.g., *Juriss* v. *McGowan,* 957 F.2d 345, 349 (7th Cir. 1972). Furthermore, the presumption applied by the majority is unfair. Although the town of East Hartford has agreed to indemnify the police officers in this case, other public officials may not enjoy this privilege.

the 1981 investigation in the internal affairs department files *after* the warrants had been issued. He further testified that the internal affairs department files are maintained separately from regular police files and are accessible only to people working in that department and to the chief of police. Finally, he testified that he gave the file to the chief of police after the plaintiff was arrested and it was subsequently given to the defendants. Accordingly, I would direct the trial court that the existence of this earlier investigation is irrelevant to the issue of objective reasonableness unless it could be shown on remand that the information could have been obtained from other sources had the defendants conducted a reasonable investigation.

## II

Finally, I would also provide further guidance to the trial court on the issue of objective reasonableness. First, once a warrant is issued by a judge, there is a presumption that the officer's actions were objectively reasonable. "Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause, see *United States* v. *Ventresca,* 380 U.S. 102, 109, 85 S. Ct. 741, 746, 13 L. Ed. 2d 684 (1965), and a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden, see, e.g., *Rivera* v. *United States,* 928 F.2d 592, 602 (2d Cir. 1991) (search warrant)." *Golino* v. *New Haven,* supra, 950 F.2d 870.

Nevertheless, this presumption should not be interpreted as an absolute shield. "This view of objective reasonableness is at odds with our development of that concept in *Harlow* and [*United States* v. *Leon,* 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)]. In *Leon,* we stated that our good-faith inquiry is confined to the

objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization . . . . The analogous question in this case is whether a reasonably well-trained officer in [the] petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest. It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment." (Citation omitted; internal quotation marks omitted.) *Malley* v. *Briggs,* supra, 475 U.S. 345–46.

Second, the objective reasonableness standard precludes any consideration of the motives of the police officers in seeking the warrant.[14] "Under the *Harlow* standard . . . an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Id., 341.

Third, we should underscore that the issue of objective reasonableness is quite distinct from the issue of whether there was in fact probable cause to arrest.

[14] Of course, in a § 1983 suit involving a constitutional violation where motive is an element of the cause of action, motive evidence is clearly relevant. See *Gutierrez* v. *Municipal Court,* 838 F.2d 1031, 1050–51 (9th Cir. 1988), vacated on mootness grounds, 490 U.S. 1016, 109 S. Ct. 1736, 104 L. Ed. 2d 174 (1989) (claim of equal protection clause violation based on racial discrimination); *Musso* v. *Hourigan,* 836 F.2d 736, 743 (2d Cir. 1988) (claim of first amendment violation).

*Warren* v. *Dwyer,* supra, 906 F.2d 75; *Jennings* v. *Joshua Independent School District,* supra, 877 F.2d 316–17. "Even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard." *Davis* v. *Scherer,* supra, 468 U.S. 190. With regard to fourth amendment violations, "[e]vidence before the court might be insufficient to sustain a finding of probable cause for the warrant application, yet be adequate for the judge to conclude it was reasonable for [the police officer] to believe he had a good basis for his actions." *Magnotti* v. *Kuntz,* supra, 918 F.2d 367.

Finally, on remand, the trial court should hold a hearing to determine whether there are bona fide factual disputes that would prevent the court from resolving the qualified immunity issue as a matter of law. The following rule would determine the immunity of the defendants: "[W]ell-established principles instruct that qualified immunity is appropriate if the affidavit accompanying the warrant is sufficient, after correcting for material misstatements or omissions, to support a reasonable officer's belief that probable cause existed. See [*Malley* v. *Briggs,* supra, 475 U.S. 341]; *Franks* v. *Delaware,* [supra, 438 U.S. 154]." *Magnotti* v. *Kuntz,* supra, 918 F.2d 368.

In sum, I would remand this case to the trial court to determine whether (1) the defendants had probable cause to arrest,[15] (2) whether the defendants were entitled to the shield of qualified immunity on the § 1983 count as a matter of law, and, if necessary, (3) whether the verdicts were excessive.

---

[15] See footnote 3.